UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIBERTY CAPITAL GROUP, individually
and on behalf of all others similarly
situated,

        Plaintiff,

   -v-

OPPENHEIMER & CO.,

        Defendant.

25-cv-4822 (JSR)

ORDER

JED S. RAKOFF, U.S.D.J.:

Before the Court is the motion of defendant Oppenheimer & Co. ("Oppenheimer") to compel certain document discovery responses from, and to take the deposition of, non-party Harold Kleiman, the sole owner, member, and employee of plaintiff Liberty Capital Group ("Liberty"). See ECF No. 70. For the reasons that follow, the Court hereby grants Oppenheimer's motion in part and denies it in part.

The subpoena that Oppenheimer served on Kleiman on December 11, 2025, required him to sit for a deposition and to provide five categories of documents, all of which concern accounts and other assets that Kleiman has held and holds at financial institutions other than Oppenheimer. See ECF No. 70-1 at 6. Kleiman objected to, and refused to produce documents in response to, Oppenheimer's requests for written discovery. See ECF No. 70-2. He now opposes Oppenheimer's motion, see ECF No. 71, on the basis that the categories of documents that Oppenheimer seeks are, among other things, neither material nor

1

relevant to any claims or anticipated defenses in this case and on the basis that he, as opposed to Liberty, is not a class representative or even a class member. Id. Kleiman does not make separate arguments in response to Oppenheimer's subpoena for his deposition testimony. See generally id.

The Court is not persuaded that Kleiman's testimony or documents are categorically beyond the scope of discovery. Even though Kleiman is not a class representative or even a class member, he does not deny that he is and has been Liberty's sole controlling person throughout the class period. The law is clear that, where a corporate entity has a "sole owner, his or her knowledge is its knowledge," and the owner's knowledge "is imputable to that corporation." E.g., Baker v. Latham Sparrowbush Assocs., 72 F.3d 256, 255 (2d Cir. 1995). Hence, Oppenheimer's motion to compel testimony and documents from Kleiman does not represent an impermissible attempt to pierce the corporate veil. The primary case on which Liberty relies, which concerned the allocation of debts and liabilities in connection with the sale or merger of a corporation, is inapposite for numerous reasons, not least because none of the entities involved in that case had a sole controlling person. See Miller v. Mercuria Energy Trading, Inc., 291 F. Supp. 3d 509, 525-26 (S.D.N.Y. 2018).

Thus, documents or deposition testimony concerning Kleiman's knowledge may be relevant to the claims or defenses in this case. See Fed. R. Civ. P. 26(b)(1). The Court therefore grants Oppenheimer's

motion to the extent that it seeks to require Kleiman to sit for a deposition. But because Kleiman is not a class representative or member, Oppenheimer may permissibly obtain only such testimony from him as concerns Kleiman's knowledge that (1) is imputable to Liberty and (2) is relevant to the claims and defenses in this action.

Turning to the prong of Oppenheimer's motion that seeks to compel Kleiman to provide five categories of documents, it does not follow from the Court's observations thus far that these documents are discoverable. Indeed, the documents that Oppenheimer seeks are probative of, at most, Kleiman's "understandings," "expectations," and "preferences" concerning the accounts that he has held or holds at, and the interest rates that he has received or receives from, financial institutions other than Oppenheimer. See ECF No. 62 at 13. But, as Liberty points out, the Court has already held that the legal standards governing all the claims that remain at issue in this case are "objective, not subjective." Liberty Cap. Grp. v. Oppenheimer & Co., --- F. Supp. 3d ---, 2025 WL 3507217, *10 (S.D.N.Y. Dec. 8, 2025). Oppenheimer's arguments that documents concerning other interest rates that Kleiman may have received are relevant misapprehend how objective standards work. Specifically, Oppenheimer's explanation that the evidence it seeks "is probative of what Liberty, a typical class member . . . determined was 'reasonable,'" ECF No. 70 at 2-3, conflates Liberty's (or any other class member's) subjective views with the "reasonable expectations of the average consumer," which is the

standard that governs Liberty's contract claim, see Liberty Cap. Grp., 2025 WL 3507217, at *10. Similarly, Oppenheimer's argument that evidence of other interest rates that Kleiman may have received is relevant to Liberty's "position" and "circumstances" at the time that it began participating in Oppenheimer's Advantage Bank Deposit Program, see ECF No. 70 at 3, ignores the fact that the inquiries controlling Liberty's implied covenant and General Business Law § 349 claims concern "a reasonable person" and "a reasonable consumer," respectively, see Liberty Cap. Grp., 2025 WL 3507217, at *10.

Nor are the categories of documents that Oppenheimer seeks from Kleiman relevant to Oppenheimer's anticipated defenses. As the Court has already ruled, Oppenheimer's potential causation defense applies classwide because Oppenheimer has presented no basis for the Court to conclude that "class members could conceivably have been damaged by different causes." Id. at *11. Oppenheimer's potential waiver and mitigation defenses may involve considerations specific to individual class members; for instance, asserting a waiver defense would require Oppenheimer to show when each class member (or that class member's sole controlling person, in Liberty's case) knew that Oppenheimer had breached its contractual obligations. See id. But none of the categories of documents that Oppenheimer seeks from Kleiman is relevant to that issue. Importantly, Kleiman has represented that he possesses no documents or communications concerning cash sweep programs other than Oppenheimer's. See ECF No. 70-2 at 10. The fact that other

financial institutions may have paid Kleiman various interest rates on funds that he may have held in different types of accounts is not relevant to whether Liberty knew that Oppenheimer had breached its promise to pay Advantage Bank Deposit Program interest rates that would "vary based on prevailing economic and business conditions." See ECF No. 1 ¶ 18. And while Kleiman's knowledge is imputable to Liberty, Oppenheimer does not (and could not) argue that actions Kleiman took with his personal funds are imputable to Liberty as well. Hence, what Kleiman "did . . . with his own cash" cannot be "probative of whether Liberty mitigated its alleged damages." See ECF No. 70 at 3.

Accordingly, the Court denies Oppenheimer's motion to the extent that it seeks to compel Kleiman to provide documents in response to Oppenheimer's subpoena.

The Clerk of Court is respectfully directed to terminate the motion at docket number 70.

SO ORDERED.

New York, New York
February 6, 2026

JED S. RAKOFF, U.S.D.J.